## 10088

### BARNES v. LYLES.

#### (96 S. E. 723.)

1. Trusts—Attorney Acting as Trustee—Duties.—An attorney acting as trustee was not liable for failure to interpose an unmeritorious or frivolous defense in favor of his client or of himself as trustee against foreclosure of a mortgage.

2. Trusts—Borrowing Money—Interest.—Where an attorney acting as trustee, in order to protect his client's interests, borrowed money as an indorser, and was required to pay 8 per cent. interest, the client could not complain that he charged her that rate.

3. Trusts—Attorney Acting as Trustee—Purchase of Property.—An attorney acting as trustee, having loaned money to his client, was interested in a foreclosure sale of her property to the extent of his claim and was entitled to buy in the land.

4. Trusts—Attorney Acting as Trustee.—Losses. — Client and *cestui que trust held* not entitled to accounting from the attorney acting as trustee for money and property, in the care of which he incurred personal losses though he acted diligently.

Before DeVore, J., Richland, Spring term, 1917. Affirmed.

Suit by Sarah Barnes against William H. Lyles. Judgment dismissing the complaint, and plaintiff appeals.

*Messrs. J. Fraser Lyon* and *David E. Anthony,* for appellant, cite: *As to the relationship between attorney and client, and the duty owed by the former to the latter:* 61 S. E. 806, 809 (N. J.); 23 L. R. A. (N. S.) 679, 690 (Ga.); 13 S. E.

30—110.

561; 1 McC. Chan. 524; 1016 Am. Dec. 623; 64 S. C. 254; 26 Conn. 213; 27 Kan. 195; 31 Ky. 580; 30 S. C. 238; 9 S. E. 115; 33 Cal. 425; 91 Am. Dec. 644; 14 N. J. Eq. 451; 116 Ga. 396; 42 S. E. 713; 16 Abb. Pr. (N. Y.) 423; 29 N. J. Eq. 481. *Plaintiff's cause of action not barred by any statute of limitations:* 100 Va. 115; 40 S. E. 680; 13 W. Va. 149; 27 S. E. 309; 24 W. Va. 299; 1 Rich. Chan. 132; 95 U. S. 576; 77 App. Div. (N. Y.) 284; 11 Pa. 207; 26 Wash. 89; 66 Pac. 116; 4 Cyc. 958, and cases cited; 15 S. C. 164, and cases cited; 2 Wood on Limitations (4th Ed., p. 1014, *et seq.*); 106 U. S. 99-107; 106 S. C. 310-314; 91 S. E. 312; 76 S. C. 170; 56 S. E. 780; 97 S. C. 224; 81 S. E. 489; 72 S. C. 503-504; 52 S. E. 597; 106 S. C. 346; 91 S. E. 293.

*Mr. J. B. S. Lyles* and *Alfred Wallace, Jr.,* for respondent. *Mr. Wallace* cites: *Upon whole case:* 93 S. E. 425; 14 Rich. Eq. 176; 39 Law Ed. 938; 158 U. S. 172; 101 S. C. 457; 86 S. E. 26; 92 S. C. 448; 75 S. E. 789; 1 Strob. Eq. 53; Code of 1912, vol. I, sec. 3676; 1 McCord's Chan. 1119; 4 S. C. 144. *As to the relation between attorney and client, and its termination:* 6 C. J. 672; 64 S. C. 254; 42 S. E. 103; 6 C. J. 684; 40 S. C. 114; 18 S. E. 517; 19 S. C. 554; 101 U. S. 209; 25 L. Ed. 932. *As to the statute of limitations:* Code, vol. II, secs. 137, 136; 77 S. C. 541; 58 S. E. 610; 84 S. C. 286; 66 S. E. 120; Code, vol. II, section 143; 75 S. C. 237; 55 S. E. 310. *As to the presumption from 20 years:* 14 S. C. 93; 3 Strob. 448; 2 McC. 486; 2 Hill 592; 3 Strob. 500; 3 Strob. 319; 1 Hill's Chancery 380; 64 S. C. 502; 42 S. E. 594; 21 S. C. 277; 43 S. E. 436; 39 S. C. 950; 62 S. E. 73; 82 S. E. 638; 4 S. C. 249; 10 Rich. Eq. 346; 16 S. C. 560; 19 S. C. 477; 136 U. S. 386; 34 Law Ed. 424; 18 S. C. 526; 93 S. E. 425. *As to that calculation and statement of account of transactions of Wm. H. Lyles:* Bailey's Eq. 23; 2 McC. 1; 2 McC. Chan. 185. *As to rate of interest:* 10 Rich. Eq. 53; 37 S. C. 140, 141 *As to the form of the account:* 2 McC. Ch. 1.

September 10, 1918.

The opinion of the Court was delivered by Mr. JUSTICE HYDRICK.

Plaintiff brought this action in March, 1916, calling upon defendant to account to her, as her trustee, for his management and disposition of certain real estate. The Circuit Court found that the trust relation was dissolved and disavowed by defendant, with the knowledge and acquiescence of plaintiff, more than 20 years before the commencement of the action, and that the action was, therefore, barred by the statute of limitations and plaintiff's laches. The Court found, also, that, even if defendant were liable to account, the evidence showed that plaintiff was indebted to him in the sum of $1,479.39, and dismissed the complaint.

The salient and essential facts are undisputed. In 1875 plaintiff was seized of a life estate in a tract of land of about 2,400 acres in Kershaw county with remainder to her children. She and her husband brought an action against their children then *in esse,* and obtained a decree, authorizing them to mortgage about 1,860 acres of the tract to George Alden to secure him for the loan of $3,000 to build a mill on it. Alden went into bankruptcy, and J. T. Hay, his assignee, and W. D. Trantham, the agent of his creditors, brought an action, in 1880, against plaintiff and her husband and their children then *in esse,* and obtained a judgment of sale for foreclosure. At that sale Hay became purchaser. He subsequently conveyed the greater part of the tract to plaintiff, taking her bond and mortgage for the purchase money. The part so conveyed was, found by surveys afterwards made, to contain something over 1,800 acres. While so invested with the title, plaintiff gave a second mortgage to one Baum. About 1887 she became involved in litigation with Baum about her indebtedness to him, and employed the defendant, who resided at Columbia, to assist her local counsel at Camden, where she lived, in representing her. The

litigation resulted in a satisfactory compromise by which Baum's claim was considerably reduced, and plaintiff agreed to pay the balance admitted to be due in annual installments.

Plaintiff's husband had died, leaving her with a large family of small children. She had no income except the rents from the land, which were insufficient to support her and her children and leave anything to go toward the payment of the interest on her debts, to say nothing of the principal. Her creditors were pressing her for payment. In this extremity Mr. Lyles conceived the idea that the best way to relieve her predicament and possibly save something for her would be to sell enough of the land to pay her debts, and thereby prevent the sale of the whole of it under a judgment of foreclosure. To effect that purpose she conveyed to him, in December, 1889, 487 acres of the tract, in trust to sell the same and apply the proceeds to the payment of her debts, including the fees due to him and his associate for their services as her attorneys.

At that time Mr. Lyles told plaintiff that, in his opinion, Hay acquired a good title in fee when he purchased under the judgment of foreclosure of the Alden mortgage, and consequently sale of the premises under a judgment for foreclosure of his mortgage would carry a good title. It was so held in a case afterwards decided. *Barfield v. Barnes,* 108 S. C. 1, 93 S. E. 425. But he told her, also, that inasmuch as Hay had conveyed the land to her, who was the original life tenant, he thought that her children had an equity, as against her, or any one claiming under her with notice, to have a trust declared in the land for their benefit, which would be subject to Hay's mortgage, and probably, also, to Baum's mortgage; and for that reason he doubted whether he could find a purchaser who would be willing to take such title as she could make without a decree of Court to which they were parties authorizing her to sell. He, therefore, advised and urged her repeatedly, both before and after the execution of the trust deed to him, to bring an action against

her children to obtain such authority. But she never did so, and no sale was effected, as there were persistent rumors that the land was entailed, and that her children would be entitled to it after plaintiff's death.

In August, 1890, pending these efforts to sell a part of the land, Hay brought an action to foreclose his mortgage, making Baum and Mr. Lyles parties defendant therein. During the pendency of that action, and even after the judgment was obtained, and up to the day of sale, Mr. Lyles continued his efforts to find a purchaser for enough of the land to pay off the mortgages, and was constantly urging plaintiff to do the same, telling her that, if they could do so, he could stop the sale and possibly save something for her.

At this point we digress to dispose of a minor issue. Plaintiff's attorneys charge defendant with negligence in the performance of his duty to her in failing to answer Hay's complaint, either for himself or for her, without suggesting, however, any defense which he could have interposed with reasonable probability of success. An attorney or trustee is under no duty to interpose an unmeritorious or frivolous defense for his client or *cestui que trust.* Without reflection, it might occur to some that the defect in plaintiff's power to make a good title, as against the equities of her children, which Mr. Lyles had pointed out, might have been interposed against Baum's mortgage; but that suggestion overlooks the fact that Baum's mortgage was certainly good, at least to the extent of plaintiff's life estate. The circumstances, therefore, fully justified defendant's course; for litigation would have resulted only in adding to the costs and disbursements of the action and increasing plaintiff's burden of debt.

Hay obtained judgment of foreclosure at the fall term, in 1890, and in December the land was advertised for sale on sales day in January, 1891.

On December 23, 1890, Mr. Lyles wrote plaintiff:

"Dear Madam: Your letter of the 21st instant is at hand. I suppose the land was advertised by Mr. Hay, as I had informed him that I had found it impossible to raise the money to take up his and Mr. Baum's claim, and he would have to look out for himself. I hope to be able to bid in the land for you and thus save you something. I will make it bring enough anyway to pay all of your debts. The difficulty is this: You now owe Mr. Hay $3,691.50, with interest from the 4th of September; you owe Mr. Baum still a balance of about $300.00, and you owe over here two notes, one for $672.00 and the other for $400.00, which makes the total of your indebtedness something over $5,000.00, and your income from your place is barely sufficient for you to live on, and you have been able to pay nothing on account of your interest. You owe me a balance of $26.42, as you will see by a statement which I enclose herewith on the sum which I advanced for you during the year. So that it is impossible for me to tell any one thinking of making a loan that you can pay up the interest on the debt. I do not see any plan to do otherwise than to bid in the land in my name and sell it out again. If you can make an arrangement with any one to sell at a fair price, go ahead and do so and you will help me to get the matter straightened up."

On December 27, 1890, he wrote her again:

"My Dear Madam: Yours of the 26th instant is at hand. I am myself much worried for your sake on account of the turn your matters have taken and will gladly do all in my power to help you out of your difficulties. * * * If you can in any way arrange to raise the money on your land south of the creek to take up the Hay debt, you might manage to pay the interest on that amount yearly out of your rent and we could push the sale of the tract on the north side of the creek so as to relieve you. If the sale has to take place, however, I will bid the land in, unless it brings a fair price, to be sold out again for your benefit, if you can find a purchaser within a reasonable time."

The land was sold on sales day in January, 1891, and bought by Mr. Lyles at $4,250, which was absorbed in paying the judgment and the costs and disbursements of the action. At that time Mr. Lyles had incurred liability for plaintiff as her indorser on the two notes mentioned in his letter of December 23d, which he had afterwards to pay, and she was indebted to him in the balance there mentioned of $26.42, besides the fee that she owed him for his professional services amounting in all to something over $1,500. He testified that he bought the land primarily to save himself from loss, and also with the intention that, if plaintiff could find a purchaser for it within a reasonable time, or if he could find one at a price that would save him from loss, and leave anything for her, to give her the benefit of such resale.

With that purpose in view he rented the land and continued his effort to sell it during the next three years, in the meanwhile making advances to and for plaintiff, as her necessities required, and keeping an account of his receipts and disbursements, until the fall of 1893, when it became apparent to him that he would never be able to save himself from loss, to say nothing of being able to save anything for plaintiff. At that time he so informed her, and told her that he could not let her have any more money. From that time until this action was brought, during a period of nearly 23 years, defendant heard nothing from plaintiff. By her silence she acquiesced in his view that he was entitled to the land and all that he could get out of it.

At that time she owed him something over $2,000, most of which was on obligations that he had indorsed for her, which bore interest at 8 per cent. per annum. He had to borrow money to pay for the place, and had to pay interest on it at 8 per cent. per annum. Clearly, therefore, there can be no just complaint that he was allowed to charge that rate, so long as he had to pay it, in his accounting with plaintiff.

He was under no duty to indorse for her, or to borrow money for her at all, and he was under no duty to her to buy the place at his own risk and expense and give her the benefit of a resale. He was a party to the action and interested in the sale to the extent of her indebtedness to him, and, therefore, had the right to buy the land, or make it bring enough to save himself from loss. His agreement to give her the benefit, if any, from a resale of it, was gratuitous, and in good faith he tried to dispose of it, so that he could save himself from loss and save something for her, but was unable to do so.

During the time that he was endeavoring to sell the land he received no assistance or co-operation from her. The rumors as to the cloud upon the title persisted, and she made no effort to co-operate with him in dispelling that cloud, so that he was unable to effect any sale without personally warranting the title. Clearly he was under no obligation to incur that liability for her benefit. But he had to do it to sell at all. Not only so, but he had to sell on long time, and agree to take payment for the greater part of the land (all except a small tract of 83 acres, which he sold to Dinkins, in December, 1892, for $500—$50 cash and the balance in four annual installments) in cotton to be paid in annual installments, extending over periods of six years in one case and eight in the other, and take the risk as to the price he might be able to get for it. These sales were made in December, 1895, to Barfield and Trantham.

Even at the price so obtained for the land, the evidence shows that he was never able to recoup himself. No one can read the testimony, in the light of the undisputed facts and circumstances, without concluding that defendant acted with the utmost good faith and fairness toward plaintiff in all of his dealings with her, and that her claim is not only stale, but without merit.

Judgment affirmed.